## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

BERNADETTE H.,

                        Plaintiff,    1:21-cv-20586-NLH

v.                                    **OPINION**

COMMISSIONER OF SOCIAL
SECURITY,[1]

_____

**APPEARANCES:**

SAMUEL FISHMAN
11450 BUSTLETON AVENUE
PHILADELPHIA, PA 19116

     _On behalf of Plaintiff_


STUART WEISS
SOCIAL SECURITY ADMINISTRATION
OFFICE OF PROGRAM LITIGATION
OFFICE OF THE GENERAL COUNSEL
6401 SECURITY BOULEVARD
BALTIMORE, MD 21235

     _On behalf of the Commissioner_


**HILLMAN**, District Judge

     This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. §

405(g), regarding Plaintiff's application for Disability

_____

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner
of the Social Security Administration (the "SSA").

Insurance Benefits ("DIB")[2] under Title II of the Social Security Act.  42 U.S.C. § 423, et seq.  The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled at any time since her alleged onset date of disability, August 17, 2017.  For the reasons stated below, this Court will affirm that decision.

## I.   BACKGROUND AND PROCEDURAL HISTORY

On June 15, 2018, Plaintiff filed an application for DIB, alleging that she became disabled on August 17, 2017.  Plaintiff claims that she cannot return to work as a medical secretary because of her impairments of chronic migraines, cluster headaches, obesity, hypertension, anxiety, and depression.[3][4] (ECF 10 at 2).

Plaintiff's claim was denied initially and upon

---

[2] DIB is a program under the Social Security Act to provide disability benefits when a claimant with a sufficient number of quarters of insured employment has suffered such a mental or physical impairment that the claimant cannot perform substantial gainful employment for at least twelve months.  42 U.S.C. § 423 et seq.

[3] On the alleged onset date, Plaintiff was 58 years old, which is defined as a "person of advanced age" (age 55 or older).  20 C.F.R. § 404.1563.

[4] Plaintiff's application for DIB did not claim obesity as an impairment.  (R. at 313).  Rather, the ALJ independently determined that it was a severe impairment, (R. at 160), and Plaintiff identifies obesity as an impairment in this appeal (ECF 10 at 2).

reconsideration.  (R. at 158).  Plaintiff requested a hearing before an ALJ which was held on January 13, 2020.  (Id.)  On February 3, 2020, the ALJ issued an unfavorable decision. (Id.).  Plaintiff's Request for Review of Hearing Decision was denied by the Appeals Council on October 20, 2021, making the ALJ's decision final.  (Id. at 1-7).  Plaintiff brings this civil action for review of the Commissioner's decision.

## II. DISCUSSION

### A.   Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  The inquiry is not whether the reviewing court would have made the same determination, but whether the

3

Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).  "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all the non-medical evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

4

> Unless the [Commissioner] has analyzed all
> evidence and has sufficiently explained the
> weight he has given to obviously probative
> exhibits, to say that his decision is
> supported by substantial evidence approaches
> an abdication of the court's duty to
> scrutinize the record as a whole to
> determine whether the conclusions reached
> are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although
an ALJ, as the factfinder, must consider and evaluate the
medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here
is no requirement that the ALJ discuss in its opinion every
tidbit of evidence included in the record," Hur v. Barnhart, 94
F. App'x 130, 133 (3d Cir. 2004).

In terms of judicial review, a district court is not
"empowered to weigh the evidence or substitute its conclusions
for those of the fact-finder." Williams, 970 F.2d at 1182.
However, apart from the substantial evidence inquiry, a
reviewing court is entitled to satisfy itself that the
Commissioner arrived at his decision by application of the
proper legal standards.  Sykes, 228 F.3d at 262; Friedberg v.
Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris,
508 F. Supp. 791, 793 (D.N.J. 1981).

**B.   Standard for DIB**

The Social Security Act defines "disability" for purposes
of an entitlement to a period of disability and disability
insurance benefits as the inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a plaintiff qualifies as disabled only if her physical or mental impairments are of such severity that she is not only unable to perform her past relevant work, but cannot, given her age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work.  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated regulations for determining disability that require application of a five-step sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step process is summarized as follows:

1.   If the claimant currently is engaged in substantial gainful employment, she will be found "not disabled."

2.   If the claimant does not suffer from a "severe impairment," she will be found "not disabled."

3.   If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4.   If the claimant can still perform work she has done in

          the past ("past relevant work") despite the severe impairment, she will be found "not disabled."

5.    Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not she is capable of performing other work which exists in the national economy.  If she is incapable, she will be found "disabled."  If she is capable, she will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of the analysis, the burden is on the claimant to prove every element of her claim by a preponderance of the evidence.  See id.  In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

**C.  Analysis**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 17, 2017,

Plaintiff's alleged onset date and that Plaintiff met the insured status requirement through December 31, 2022.  (R. at 160).  At step two, the ALJ found that Plaintiff's impairments of obesity and migraines were severe.  (Id.)  In addition, the ALJ stated that she found Plaintiff's impairments of hypertension, anxiety disorder, and depressive disorder to be non-severe.[5]  (Id. at 161).  At step three, the ALJ determined that Plaintiff's impairments individually or in combination with one another did not equal the severity of one of the listed impairments.  (Id. at 164-65).

The ALJ next determined that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels,[6] with limitations to "no assembly line pace work; no concentrated exposure to extreme temperatures and vibration; and no work in direct sunlight."  (Id. at 165).  At steps four and five, the ALJ determined that Plaintiff could perform her past relevant work as a medical secretary.  (Id. at 170).  The ALJ held in the alternative that there were a

---

[5] It appears that the ALJ considered Plaintiff's claim of cluster headaches as part and parcel of Plaintiff's impairment of migraines.  (R. at 165 (discussing headaches and migraines together at step three)).

[6] 20 C.F.R. § 404.1567 ("Physical exertion requirements. To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy.").

significant number of jobs that existed in the national economy
that Plaintiff could otherwise perform, such as the jobs of
sales attendant, photocopy machine operator, and routing clerk.
(Id. at 171).

Plaintiff cites to five assignments of error: (1) the ALJ
erred by failing to adequately address Plaintiff's mental
limitations in the RFC; (2) the ALJ relied on alternative
occupations at step five that were categorized as unskilled,
light work and that reliance required a finding of disability
because Plaintiff was older than 55; (3) the ALJ erred by
failing to conclusively address Plaintiff's severe obesity; (4)
the ALJ erred by failing to evaluate medical opinion evidence;
and (5) the ALJ and the Appeals Council had no power to
adjudicate Plaintiff's case because they were not properly
appointed.  (See ECF 10 at 4-29).  The Court takes each argument
in turn.

    **i.   Whether the ALJ Erred in Formulating the RFC.**

In arguing that the ALJ erred in formulating the RFC,
Plaintiff contends that the analysis is deficient because it
does not account for her mental impairments.  Specifically,
Plaintiff contends that the ALJ's conclusion at step three that
Plaintiff had mild mental limitations using the Psychiatric

Review Technique (the "PRT")[7] is not accounted for in the RFC. (ECF 10 at 4-11).  Plaintiff cites the ALJ's PRT determination that Plaintiff had mild limitations in her ability to "understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself[.]" (Id. at 5 (citing R. at 163)).  She states that the ALJ's conclusion in the RFC that she could not do assembly line work because of pacing issues is not well reasoned and that a conclusion that she would have issues with pacing in assembly line work necessitates a conclusion that she would have issues with pacing if she resumed her prior work as a medical secretary.  (ECF 10 at 5-6).  She also argues that the ALJ's narrow restriction as to assembly line pace work does not account for other mental limitations that the ALJ found in conducting the PRT such as the ability to understand or interact with others.  (Id. at 6-7).  These complaints boil down to a

_____

[7] To properly consider Plaintiff's mental impairments at steps two and three, an ALJ is required to undertake a "Paragraph B" assessment.  See Marrollo v. Commissioner of Social Security, 2020 WL 3046317, at *5 (D.N.J. 2020) ("In considering a claimant's mental impairments, an ALJ is required to review paragraph B areas of mental functioning, which include: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. A marked limitation is where a claimant's functioning in an area independently, appropriately, effectively, and on a sustained basis is seriously limited. An extreme limitation is where a claimant is not able to function in an area independently, appropriately, effectively, and on a sustained basis.").

contention that the ALJ did not incorporate the PRT into the RFC and otherwise did not adequately explain her findings in the RFC.  (Id. at 4-11).

The Court disagrees.  First, the ALJ made clear that she was incorporating her PRT findings into the RFC.  (R. at 164 ("The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis.")).  Further, in the RFC analysis itself, the ALJ explained that she did not find the extent of Plaintiff's complaints of mental impairments to be persuasive because she was "able to handle many of her own needs and complete[d] many typical daily activities such as preparing food, driving a car, some cleaning, and going out alone."  (Id. at 167).  The ALJ also noted that Plaintiff's claims were belied by the fact that she handled her own finances.  (Id.)  Given the ALJ's through discussion of how Plaintiff's claimed mental impairments stacked up against her daily activities, the Court finds no deficiency in the RFC analysis.

Indeed, in order for the ALJ to conduct a proper RFC analysis, no magic set of words or order of analysis is required.  Hur, 94 F. App'x at 133 (stating that the ALJ is not required to recite every tidbit of evidence); Lorie H. v. Comm'r of Soc. Sec., No. 1:20-CV-13192-NLH, 2022 WL 2803168, at *6 (D.N.J. July 18, 2022) ("[A]n ALJ does not need to use

particular language or adhere to a particular format in conducting her RFC analysis."). Plaintiff seems to be implying that the ALJ was required to go one by one through Plaintiff's mental limitations and explain how they mapped onto possible jobs she could perform. (ECF 10 at 4-11). That is not what the law requires. Hess v. Comm'r Soc. Sec., 931 F.3d 198, 209 (3d Cir. 2019) ("[N]o incantations are required at steps four and five simply because a particular finding has been made at steps two and three."). Because the ALJ adequately incorporated Plaintiff's mental limitations in the RFC analysis and explained what pieces of evidence led her to arrive at her ultimate RFC conclusion, the Court rejects Plaintiff's first argument.

**ii.  Whether the Alternative Occupations Cited by the ALJ at Step Five Necessitated a Finding of Disability Because Plaintiff Was Over 55.**

Here, Plaintiff argues that the SSA's regulations require a finding of disability for an individual who is over 55 and is limited to light, unskilled work. (ECF 12-15). Plaintiff is essentially arguing that the Medical-Vocational Guidelines, or "Grids,"[8] require a finding of disability as a matter of law. She cites to § 202.06 of the Grids which provides that a claimant

---

[8] The Grids is a group of clear rules that dictate a finding of disabled or not disabled based on a claimant's vocational factors (age, education, and work experience) and individual RFC. See Medical-Vocational Guidelines of Appendix 2 of 20 C.F.R. pt. 404, subpt. P, app. 2.

limited to light work, of advanced age, with a high school degree or more whose education does not provide for direct entry into skilled work, who has previous experience in skilled or semi-skilled work but whose skills are not transferrable must be found disabled. 20 C.F.R. pt. 404, subpt. P, app. 2, § 202.06. The problem is that, by their own terms, the Grids do not apply. The section of the Grids Plaintiff cites is titled "Residual Functional Capacity: Maximum Sustained Work Capability Limited to Light Work as a Result of Severe Medically Determinable Impairment(s)." Id. Here, Plaintiff is not limited to light work.  The ALJ specifically found that Plaintiff could "perform a full range of work at all exertional levels[.]"  (R. at 165). Indeed, Plaintiff concedes that "the ALJ in this case found [Plaintiff] capable of all levels of exertion[.]"  (ECF 10 at 13).

Despite this, Plaintiff contends that because the alternate jobs that the ALJ stated Plaintiff could do at step five were light and unskilled, § 202.06 of the Grids apply and require a finding of disability.  (Id.)  Plaintiff's argument cites no case law and turns the plain meaning of the Grids on its head. The Grids deal with disability determinations controlled by RFC findings, not by potential jobs in the national economy. Virginia R. v. Comm'r of Soc. Sec., No. CV 20-20687 (KM), 2022 WL 671362, at *4 (D.N.J. Mar. 7, 2022) ("The Medical-Vocational

Rules set forth tables, or grids, with various combinations of age, education, work experience and RFC, and direct a finding of disabled or not disabled for each combination.").

To the extent that Plaintiff is arguing that the fact that the Vocational Expert (the "VE") only identified light work for potential alternative jobs in the national economy means that the RFC should have been limited to light work, Plaintiff cites no controlling law for that proposition and the Court is not aware of any.[9]  See Davis v. Comm'r Soc. Sec., 849 F. App'x 354, 357 (3d Cir. 2021) (the VE testifies based on the RFC); Anderson v. Comm'r of Soc. Sec., 406 F. App'x 32, 36 n.1 (6th Cir. 2010) ("Anderson does not explicitly claim that the VE's testimony should change his RFC, but rather than it should dictate the application of a "sedentary" grid rule. Because the grid rules are based on the RFC and not the characteristics of the available jobs, his argument would only succeed if the VE's testimony could determine the RFC.");  Day v. Comm'r of Soc.

---

[9] Plaintiff cites to Distasio v. Shalala, 47 F.3d 348, 349 (9th Cir. 1995) in which the Ninth Circuit held that the ALJ erred where she had an RFC finding of light work but then accepted the VE's testimony that the claimant "could only perform what she believed were sedentary jobs."  Id.  First, Distasio is not binding on this Court.  Second, unlike in Distasio, the VE here did not testify that Plaintiff could only perform light work but offered cited jobs that happened to be at the light level in response to a hypothetical about a claimant who could perform work at all exertional levels.  (R. at 199).  Thus, the Court does not find Distasio's holding to be persuasive based on the facts of the instant case.

Sec., No. 616CV191ORL22GJK, 2017 WL 9362901, at *3 (M.D. Fla. Jan. 18, 2017), report and recommendation adopted, No. 616CV191ORL22GJK, 2017 WL 1396476 (M.D. Fla. Apr. 19, 2017) ("The ALJ determines the claimant's RFC, not the VE."). Simply put, because Plaintiff's RFC was not limited to light work, the Grids are inapplicable to her, and her second argument fails.

### iii. Whether the ALJ Improperly Evaluated Plaintiff's Severe Obesity.

Plaintiff argues that the ALJ did not satisfy SSR 19-2p in discussing Plaintiff's obesity and that she only conducted a boilerplate discussion of the impairment. (ECF 10 at 16-20). The ALJ specifically stated, "The undersigned has considered Social Security Ruling 19-2p, which instructs adjudicators to consider the effects of obesity not only under the listings, but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity." (R. at 164).  The fact that the ALJ did not repeatedly cite to Plaintiff's obesity thereafter does not undermine the ALJ's decision as the ALJ is not required to discuss every tidbit of evidence in the record. Hur, 94 F. App'x at 133.  Indeed, such a requirement would make decisions by ALJs clunky and redundant.

Further, Plaintiff's allegation that the ALJ only considered her obesity in a boilerplate manner is belied by the

detailed discussion of Plaintiff's physical functional limitations in the RFC analysis.  (R. at 165-167).  Plaintiff takes issue with the ALJ's statement that there is no "objective evidence that the claimant would be limited in lifting/carrying, and performing postural maneuvers or manipulative limitations, and/or would be absent 3 or more days per month[,]" (R. at 169), because, she argues, her height and her weight were objective evidence of obesity.  (ECF 10 at 9).  The ALJ made that statement in analyzing the statements of one of Plaintiff's medical sources, Dr. Winokur, who the ALJ found made only conclusive statements about Plaintiff's limitations without explanation.  (R. at 169).  The Court's own review of the record does not reveal a medical source that offered objective medical evidence on Plaintiff's physical limitations based on her obesity that was inconsistent with the ALJ's ultimate conclusion.  Plaintiff here is in essence asking the Court to weigh the evidence in the record differently than the ALJ, which this Court is not permitted to do.  Williams, 970 F.2d at 1182.

> **iv. Whether the ALJ Failed to Explain Her Findings on the Medical Opinion Evidence.**

Here, Plaintiff contends that the ALJ erred because she failed to follow the sequential evaluation process required by 20 C.F.R. § 404.1520(a)(4).  (ECF 10 at 22).  This argument is made in a conclusory manner making it difficult for the Court to

parse out exactly where Plaintiff believes the ALJ ran afoul the sequential evaluation process, but it appears she is contending that the ALJ assumed that Plaintiff could work prior to evaluating her limitations. (Id.) This is not the case. There is nothing in the ALJ's decision that suggests that she determined that Plaintiff could work prior to conducting a proper RFC analysis. (R. at 164-170). The ALJ only discussed Plaintiff's capacity to perform work after the RFC analysis was complete. (R. at 170-72).

The rest of Plaintiff's argument in this section is a criticism that the ALJ rejected all medical evidence in the record without sufficient explanation. (ECF 10 at 20-27). But that also mischaracterizes the decision below. Plaintiff is complaining that the ALJ did not accept Dr. Winokur's conclusions. The ALJ explained that she found much of Dr. Winokur's medical opinions to be unpersuasive because they lacked explanation. (See R. at 169 ("Dr. Winokur's medical source statement is not adequately supported and primarily consists of check boxes and 'fill in the blanks' without much supporting explanation for the limits, he proposed.")). She also noted that his medical opinions were internally inconsistent, for instance in that one said that Plaintiff could only stand two hours per day, and another prescribed the limit to be six hours per day. (Id. at 168-69). The ALJ noted that

17

Dr. Winokur did not explain these inconsistencies.  (Id.)  Based
on the Court's review of the record and the thoroughness of the
ALJ's consideration of Dr. Winokur's opinions, the Court sees no
reason to disturb the ALJ's conclusion here.

Plaintiff also complains that it was improper for the ALJ
to credit some of Plaintiff's testimony about her limitations
but then decide in a conclusory fashion to reject the whole of
Plaintiff's testimony.  (ECF 10 at 25).  She states, "Since the
ALJ was taking [Plaintiff's] testimony as fact, she either
needed to accept her limitations in her daily activities as
alleged, or explain why those reasons were inconsistent with the
record."  (Id.)  But the ALJ did explain why Plaintiff's
testimony on her limitations was not wholly persuasive in the
context of how it stacked up with the objective medical evidence
in the record.  (R. at 167-70).  The ALJ did not have to credit
Plaintiff's subjective statements where they did not otherwise
square with the objective evidence in the record.  Schaudeck v.
Comm'r of Social Security, 181 F.3d 429, 433 (3d Cir. 1999)
(explaining that allegations of pain and other subjective
symptoms must be supported by objective medical evidence, and an
ALJ may reject a claimant's subjective testimony if he does not
find it credible as long as he explains why he is rejecting the
testimony); SSR 16-3p ("In determining whether an individual
is disabled, we consider all of the individual's symptoms,

18

including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record ... Under our regulations, an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability."); 20 C.F.R. § 416.929(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence....").

Finally, Plaintiff argues that the ALJ's characterization of Plaintiff's treatment of her headaches as conservative because she received intravenous medication but not Botox is a distinction without a difference and not supported by substantial evidence. (ECF 10 at 25-27). Plaintiff is arguing that the ALJ impermissibly drew a medical conclusion that Plaintiff's intravenous treatment was more conservative than Botox. (Id. at 26). Plaintiff's argument misses the forest for the trees. The ALJ's conclusion that Plaintiff's treatment regimen was conservative was based on the totality of the circumstances: that she never received injections, never was hospitalized, never underwent surgery, and never saw a neurologist for her conditions. (R. at 167). Multiple panels of the Third Circuit have declined to find error where the ALJ suggested that a course of treatment was conservative where the

ALJ's opinion otherwise analyzed the medical opinions in the record.  See Brunson v. Comm'r of Soc. Sec., 704 F. App'x 56, 60 (3d Cir. 2017) (stating that an ALJ's finding that the claimant only received conservative treatment justified the ALJ's decision to discount the claimant's subjective statements); Tedesco v. Comm'r Soc. Sec., 833 F. App'x 957, 961 (3d Cir. 2020) (not finding error with ALJ's determination that conservative treatment did not support the claimant's allegations of absenteeism).

Indeed, under SSR 16-3p, an ALJ is charged with evaluating the consistency of a claimant's treatment with his subjective complaints.  See SSR 16-3p  (contemplating that an ALJ will consider whether the "frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints"); Green v. Kijakazi, No. 3:21-CV-00033, 2022 WL 4091972, at *7 (M.D. Pa. July 25, 2022), report and recommendation adopted, No. 3:21-CV-00033, 2022 WL 4080766 (M.D. Pa. Sept. 6, 2022) ("[A]n ALJ may properly consider the fact that conservative treatment of a claimant's medical condition contradicted the degree of severity alleged by the claimant.").

While an ALJ cannot second-guess or substitute her judgment for the medical opinion of a doctor, she may note inconsistencies between a medical source's ultimate conclusions

and the totality of a conservative treatment regimen. Facyson v. Barnhart, 94 F. App'x 110, 113 (3d Cir. 2004) ("While the ALJ could not of course substitute his own lay judgment for the examining doctors' medical expertise, he was certainly entitled to use his own experience in the weighing of evidence to sort through the various medical opinions presented en route to a reasoned conclusion."); Milano v. Comm'r of Soc. Sec., 152 F. App'x 166, 171 (3d Cir. 2005) (crediting the ALJ's conclusion that the claimant only underwent conservative treatment where the claimant's doctors recommended physical therapy and acupuncture but not surgery); see also Khan v. Saul, 855 F. App'x 343, 346 (9th Cir. 2021) ("An ALJ may also consider conservative treatment when evaluating a medical expert's conclusions."). For the foregoing reasons, the Court rejects Plaintiff's argument that Plaintiff improperly evaluated the medical evidence in the record.

   v.   **Whether the Appointment of the ALJ and the Members of the Appeals Council Was Unconstitutional Such That the Decision by the SSA in this Case Was Constitutionally Defective.**

The Plaintiff alleges that the ALJ and the Appeals Council members that presided over her case were not properly appointed by then-Acting Commissioner of Social Security, Nancy Berryhill, such that their decision in this case is not binding. (ECF 10 at 27-29). A short discussion of the legal and factual

21

background surrounding Berryhill's tenure as Acting Commissioner is necessary to address this argument.

Berryhill began serving as Acting Commissioner on January 21, 2017.[10]   Under the Federal Vacancies Reform Act (the "FVRA") an acting officer may fill a vacancy "(1) for no longer than 210 days beginning on the date the vacancy occurs; or  (2). . . once a first or second nomination for the office is submitted to the Senate, from the date of such nomination for the period that the nomination is pending in the Senate." 5 U.S.C. § 3346(a).  In Berryhill's case, it is undisputed that the 210-day period lapsed after November 16, 2017.  (ECF 10 at 27; ECF 12 at 30). Despite this lapse, Berryhill continued to serve as Acting Commissioner until June 17, 2019, when her successor, Andrew Saul took office. [11]  Saul was nominated to be Commissioner on April 17, 2018.  Reddick v. Kijakazi, No. 3:21-CV-01782, 2022 WL 16703903, at *13 (M.D. Pa. Oct. 7, 2022), report and recommendation adopted sub nom. Reddick v. Kijakazi, No. 3:21-CV-1782, 2022 WL 16700395 (M.D. Pa. Nov. 3, 2022).

Thereafter, on June 16, 2018, Berryhill ratified the appointments of the ALJs and the Appeals Council members who

---

[10] Social Security History, Nancy A. Berryhill, SOC. SEC ADMIN., https://www.ssa.gov/history/berryhill.html (last visited Nov. 15, 2022) ("Social Security History").

[11] Social Security History.

worked for the Social Security Administration.  SSR 19-1p.  This was done in response to the Supreme Court's decision in <u>Lucia v. S.E.C.</u>, 201 L. Ed. 2d 464, 138 S. Ct. 2044, 2055 (2018) which held that the ALJs at the U.S. Securities and Exchange Commission (the "SEC") were subject to the rigors of the Appointments Clause of the U.S. Constitution.  <u>Lucia</u>'s holding only applied to the SEC, but the SSA nevertheless decided to take action in the wake of the Supreme Court's decision.  SSR 19-1p.

Plaintiff contends that Berryhill did not have the authority to ratify the appointments of the ALJs and Appeals Council members because more than 210 days passed since her commencement of service as Acting Commissioner.  (ECF 10 at 27-29).  The question is whether Saul's nomination on April 17, 2018 reinstated Berryhill as Acting Commissioner until he took office in June 2019.  The answer to this question comes down to the statutory interpretation of the word "or" in § 3346(a) of the FVRA.  Specifically, whether the "or" between § 3346(a)(1)'s creation of 210-day term for an acting official on the date the vacancy occurs and § 3346(a)(2)'s creation of a term for an acting official during the pendency of the nomination of a successor makes the two clauses disjunctive.

The Third Circuit has stated that whether the word "or" makes statutory provisions conjunctive or disjunctive is context

dependent.  United States v. One 1973 Rolls Royce, V.I.N. SRH-16266 By & Through Goodman, 43 F.3d 794, 815 (3d Cir. 1994) ("Whether requirements in a statute are to be treated as disjunctive or conjunctive does not always turn on whether the word "or" is used; rather it turns on context.").  The Third Circuit has yet to address this issue in the context of the FVRA, but the courts that have considered it have almost uniformly held that the "or" allows an acting official whose term lapsed after 210 days to be reinstated by the nomination of a successor.  Reddick, 2022 WL 16703903 at *15 ("The meaning of or is usually inclusive.  For example, if a server comes to a table and asks whether anyone would like 'dessert or coffee,' no one would interpret that to preclude ordering both." (internal citations and quotation marks omitted); Neale v. Kijakazi, No. CV 21-915-SRF, 2022 WL 6111689, at *9 (D. Del. Oct. 7, 2022) ("[A] majority of courts have held that § 3346(a)(2) contains a 'spring-back' provision that enabled Berryhill to resume her role as Acting Commissioner as of the date that Andrew Saul was nominated for Commissioner in April 2018.") (internal alterations and quotation marks omitted).

Plaintiff cites to Brian T.D. v. Kijakazi, 2022 WL 179540 (D. Minn. Jan. 20, 2022) and Richard J.M. v. Kijakazi, 2022 WL 959914 (D. Minn. Mar. 30, 2022) which held that provisions (1) and (2) of § 3346(a) were mutually exclusive.  (ECF 10 at 28).

But to this Court, the plain reading of § 3346(a) shows that that it focuses on when an acting officer may serve rather than creating limits on service. 5 U.S.C. § 3346(a) (framing subsections (1) and (2) as instances when "the person serving as an acting officer as described under section 3345 may serve in the office").

Further, an inclusive reading of the statute seems more consistent with Congressional intent.  In Senate Report 105-250, the Committee on Governmental Affairs stated, "Under new section 3346(a)(2), and subject to section 3346(b), an acting officer may serve more than 150 days if a first or second nomination is submitted to the Senate, and may serve while that nomination is pending from the date the nomination is submitted. The acting officer may serve even if the nomination is submitted after the 150 days has passed although, as discussed below, the acting officer may not serve between the 151st day and the day the nomination is submitted."[12] S. REP. 105-250, at *14 (1998). Thus, this report is probative of a legislative intent to have § 3346(a)(1) and § 3346(a)(2) be read inclusively.  In this Court's view, the legislative intent as memorialized in Senate Report 105-250 bolsters the plain meaning of the text of the FVRA.  Cf. Cornerstone Residence, Inc. v. City of Clairton,

---

[12] The acting service time limit was increased from 150 to 210 days in the FVRA's final version. See 5 U.S.C. § 3346(a).

Pennsylvania, 754 F. App'x 89, 92 (3d Cir. 2018) ("Furthermore, even if the text was ambiguous, the overall structure and surrounding circumstances of the Ordinance evince a legislative intent consistent with our reading.").

Therefore, because Berryhill was validly serving as Acting Commissioner on June 16, 2018, when she ratified the appointments of the ALJs and the Appeals Council members, Plaintiff's argument that those officials did not have authority to adjudicate her case is without merit.

**III. Conclusion**

For the reasons expressed above, the Court will affirm the decision of the ALJ.

An accompanying Order will be issued.


Date: November 18, 2022             s/  Noel L. Hillman
At Camden, New Jersey               NOEL L. HILLMAN, U.S.D.J.

26